# EXHIBIT 2

Case 2:25-cv-06440-JFW-MAR     Document 1-2     Filed 07/15/25     Page 1 of 15     Page ID #:21



# AMERICAN ARBITRATION ASSOCIATION

**Robin Charves-Meeks, Claimant**
**vs.**
**Amazon Logistics, Inc., Respondent**
**Case Number:  01-20-0007-3946**

## ORDER

And now, this 6th day of November 2024, in consideration of Claimant's Motion for Partial Summary Judgment Relating to Misclassification, Respondent's Response, all exhibits and supplemental filings by the parties, and having heard oral arguments by the Parties, Claimant's Motion for Partial Summary Judgment relating to misclassification is hereby GRANTED and it is established as a matter of law that Claimant Robin Charves-Meeks (Charves-Meeks) is an employee of Respondent Amazon Logistics, Inc. (Amazon) for all claims.  Respondent Amazon failed to rebut the employee presumption and to meet its burden of showing that Claimant Robin Charves-Meeks was not an employee of Amazon under <u>Dynamex Operations W., Inc. v. Superior Court</u>, 4 Cal. 5th 903 (2018)(test to determining whether a worker is an employee or independent contractor under California wage orders); <u>Gonzales v. San Gabriel Transit, Inc.</u>, 40 Cala. App. 5th 1131, 1157 (2019). ("the ABC test applies to Labor Code claims which are either rooted in one or more wage orders or predicated on conduct alleged to have violated a wage order.").  A Memorandum follows setting forth the facts, law and analysis supporting this decision.

By the Arbitrator,

*Lisa M. Rau, Judge (ret.)*
Signature
Lisa M. Rau, Judge (Ret.)
Dated: November 6, 2024

## AMERICAN ARBITRATION ASSOCIATION

**Robin Charves-Meeks, Claimant**
**vs.**
**Amazon Logistics, Inc., Respondent**
**Case Number: 01-20-0007-3946**

## MEMORANDUM OF LAW

Claimant Robin Charves-Meeks (Charves-Meeks) seeks partial summary judgment that Claimant should be classified as an employee, rather than an independent contractor, of Respondent Amazon Logistics, Inc. (Amazon) and therefore is entitled to be paid the wages and benefits due to an employee required by California law. Claimant argues that she is presumed to be an employee because the Respondent did not meet its burden of proving that it met all 3 elements of the ABC test set forth in Dynamex Operations W., Inc. v. Superior Court, 4 Cal. 5th 903 (2018). Respondent argues that it has met its burden under the ABC test, a business-to-business exemption negates the application of the ABC test, that Claimant does not satisfy the Borello multi-factor analysis that should apply to Claimant's non-wage order claims, and that the PAGA claim fails under a statute of limitations defense.

Summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56. The question posed in this case is whether based upon the undisputed material facts, the law requires that Claimant Charves-Meeks be treated as an employee or an independent contractor. This Arbitrator grants partial summary judgment finding that Claimant Charves-Meeks is presumed to be an employee under the law on all of her claims and Respondent failed to demonstrate what is required to rebut that presumption. First, while Respondent agrees the Dynamex ABC test applies to Claimant's wage order claims, it failed to meet its legal burden of demonstrating two of the requisite three factors[1] under the ABC test needed to rebut the employee presumption: that

---

[1] This Arbitrator's finding that Amazon failed to demonstrate two of the three required factors obviated the need to analyze whether Amazon showed that Claimant was "free from control and direction" by Amazon. This decision should not be taken to mean anything more than that with respect to the first factor, which it was unnecessary to analyze.

Claimant Charves-Meeks' work was "outside the usual course" of Amazon's business and that she was "customarily engaged in an independently established trade, occupation, or business of the same nature as the work" she performed for Amazon.  Second, because Claimant's delivery work at issue in Claimant's wage order claims is essentially the same conduct as that addressed in her labor claims, the ABC test applies to all of those claims as well.  <u>Gonzales v. San Gabriel Transit, Inc.</u>, 40 Cala. App. 5th 1131, 1157 (2019). Accordingly, the law presumes that Claimant was Amazon's employee entitled to receive state mandated protections and benefits for employees.

### FACTUAL BACKGROUND

**<u>Respondent Amazon's Delivery Business</u>**

On August 10, 2020 Amazon announced "Amazon's dedicated last-mile delivery network just delivered its 10 billionth package since launching over 5 years ago. When we started delivering packages there were less than 10,000 drivers – today there are over 400,000."  Cl. Ex. F Amazon News Tweet. Aug. 10, 2020. Jeff Bezos, Founder and CEO of Amazon, described succinctly in a letter to shareholders that what Amazon offers its customers is "low prices, vast selection, and fast delivery."  Cl. Ex. B, 2020 Amazon Annual Report.  In Amazon's U.S. Securities and Exchange Commission filing, it states that:

> "We strive to offer our customers the lowest prices possible through low everyday product pricing and shipping offers….[W]e also provide easy-to-use functionality, fast and reliable fulfillment, and timely customer service."

Cl. Ex. A. p. 3 Amazon's U.S. Securities and Exchange Commission Form 10-K (January 19, 2019).  Amazon wrote to the SEC that in North America it "fulfill[s] customer orders … through…fulfillment and *delivery networks that we operate.*" Id. (emphasis provided).  Amazon states:

> "At Amazon, we're working to be the most customer-centric company on earth.  A customer experience that we're constantly evolving is how we *fulfill and deliver customer orders*.  Our goal is to exceed the expectations of our customers by *ensuring that their*

3

*orders, no matter how large or small, are delivered* as quickly, accurately, and cost effectively as possible."

Cl. Ex. E Sr. Program Manager, Offer Evolution, NA DSP. (emphasis provided). Amazon recruits its drivers by stating that its "goal is to provide customers with an incredible package delivery experience through the last mile of the order." Id. at 1 Finally, Amazon's corporate designee conceded that Amazon's business focuses on moving packages "across the country, including the housing of the packages in warehouses … up until the point of last mile delivery."  Amazon Ex. B at 21:19-20.

**Claimant Robin Charves-Meeks' Delivery Work for Amazon**

Respondent Amazon hired Claimant Robin Charves-Meeks as part of its Amazon Flex Program to deliver packages for Amazon in California. Cl's Dec. ¶2. Claimant delivered packages for Amazon from November 2018 until October 2019. Id.  Respondent required Claimant to sign the "Amazon Flex Independent Contractor Terms of Service" (Agreement) as a condition of being hired.  Cl. Ex. D. The Agreement states: "This Agreement creates an independent contractor relationship, not an employment relationship." Id. at ¶2.  The Agreement required Claimant to use her own personal equipment to do her job.  Claimant had to use her own mobile device to download the Amazon Flex app.  Id. ¶5; II. A(5).  The Agreement also required that she use her own licensed and insured vehicle to deliver packages.  Further when she was delivering packages for Amazon during any delivery block her vehicle was considered to be under an exclusive lease to Amazon. Id.

Claimant was required to use the Amazon Flex app to sign up for delivery blocks and then follow its instructions as to delivery including the specific order of delivery and the precise route.  Cl's Dec. ¶2-3. Amazon could monitor and track her deliveries through the app.  Id. ¶5. Claimant understood that if she failed to meet the app's specific instructions, she would no longer be able to work for Amazon.  Id. ¶5.  The Agreement's Service Standards echoed these strict expectations that packages be delivered within the specified delivery block window, customers receive the packages, and undelivered packages returned to Amazon within a specific timeframe. Cl. Ex. D. Agreement III. All delivery work Claimant did was for Amazon delivering packages purchased by Amazons customers purchase at prices Amazon set and was paid by

4

Amazon at wages it established. Cl's Dec. ¶7. She never established her own delivery business nor sought a license to do so. Id. ¶8-9. Amazon chose not to depose Claimant and this evidence remains unrebutted.

**Claimant's Claims**

Claimant brought the following claims:

> First Claim: Failure to be reimbursed for business expenses
>    (Wage Order 9-2001 §§8,9; Labor Code §2802)
> Second Claim: Failure to be paid California and local minimum wages
>    (Wage Order 9-2001 §4; Labor Code §1194)
> Third Claim: Failure to be provided meal or rest breaks
>    (Wage Order 9-2001 §§11-12; Labor Code §226.7)
> Fourth Claim: Failure to be provided accurate wage statements and records
>    (Wage Order 9-2001 §6; Labor Code §§226, 226.3, 1174.5)
> Fifth Claim: Failure to have sick leave policies and pay accrued sick leave
>    (Labor Code §246(b))
> Six Claim: Failure to be paid wages within required time limits
>    (Labor Code §§201, 203, 210)
> Seventh Claim: Seeking damages and penalties for violations
>    (Unfair Competition Law, Cl. Bus. & Prof. Code §§17200 *et seq*
> Eighth Claim: Seeking payment under California Private Attorneys General
>    Act of 2004 (PAGA)(California Labor Code §2698 *et seq*).

## LEGAL ANALYSIS

**Dynamex's ABC Test**

The California Court in Dynamex set forth what has become known as the ABC test to determine whether or not a person is working as an employee and encompassed within California wage laws and protections, or they are independent contractors. Dynamex Operations W., Inc. v. Superior Court, 4 Cal. 5th 903 (2018). Dynamex's ABC test explicitly applies to any claims raised under California wage orders. Amazon concedes that the ABC test applies to Claimant's minimum wage claim (Second Claim) and her rest and meal breaks claim (Third Claim), both which implicate claims under California wage orders. Respondent's Opposition, p. 18. In Gonzales, the Court subsequently held that "the ABC test applies to Labor Code claims which are either rooted in one or more wage orders, or predicated on conduct alleged to have violated a wage order." Gonzales v. San Gabriel Transit, Inc., 40 Cala. App. 5th 1131, 1157 (2019). To do otherwise, would invite inconsistent legal rulings and potentially contradictory violations for the precise same conduct depending upon

5

whether a claim arose under the labor code as opposed to a wage order. Consistent with Gonzales, this Arbitrator finds that all of the claims alleged in this case involve the same general conduct and thus should be properly analyzed under the ABC test. Id. at 1158-60 (alleged violations need not be identical if there are "close, if not inseparable ties between the []alleged Labor Code violations and wage order provisions.")

Dynamex's ABC test starts with the presumption that workers are employees unless the hiring entity can prove all 3 of the following:

> "(A) The worker is free from the control and direction of the hiring entity in connection with the performance of the work, both under the contract for the performance of the work and in fact; *and*
> (B) that the worker performs work that is outside the usual course of the hiring entity's business; *and*
> (C) that the worker is customarily engaged in an independently established trade, occupation, or business of the same nature as the work performed."

4 Cal. 5th at 957. At the summary judgment stage, this means that Amazon must affirmatively show that all 3 factors have been proven in order to rebut the presumption that Claimant is an employee and instead is an independent contractor under the law. Amazon speculates that perhaps at the arbitration some evidence will be shown that it has met these required factors to overcome the law's presumption that Claimant is an employee. However, the law requires Respondent to rebut the presumption at the summary judgment stage with some evidence and Respondent has failed to meet its burden.

Amazon argues that because Claimant signed its "Amazon Flex Independent Contractor Terms of Service" (Agreement) that was required as an explicit condition of being hired, that she agreed that she is not an employee, whether or not in fact she truly was an employee under the law. Cl. Ex. D. The law does not permit employers to use adhesion contracts to skirt legally required labor and wage protections by mandating that a person who wants a job must sign away legal rights as a condition of hire. The legislature's role in protecting employees would be essentially eviscerated if employers could simply erase workers' legal protections by requiring potential workers to waive them in order to be hired. This is precisely why there are laws and legal precedent that must be

6

analyzed in order to determine whether someone is really an independent contractor or an employee who sacrificed legal rights just to get a hired.

This Arbitrator is heeding the <u>Dynamex</u> Court's recommendation that efficiency "will often best be served by first considering one or both of the latter two parts of the [ABC] standard."  4 Cal. 5th at 963.  Claimant's wage claims relating to minimum wage and meal and rest breaks (Second and Third Claims) will be addressed under the ABC test first followed by an analysis of her labor code claims for reimbursement of expenses, wage statements, sick leave, as well as those for damages and penalties under the Unfair Competition Law, and Private Attorneys General Act (PAGA) (First, Fourth, Fifth, Sixth, Seventh and Eighth).  In this case, Amazon's inability to establish the second and third factors supports a finding of partial summary judgment that Claimant is presumed to be an employee of Amazon negating the necessity of examining in depth whether or not the first factor also would be met.

**Factor (B):  Worker performs work outside the usual course of Amazon's business**

Amazon has conceded that <u>Dynamex's</u> ABC test is the proper analysis for Claimant's wage claims to determine whether Claimant is an employee or independent contractor.  Factor B of the ABC test addresses whether Claimant performed work that is outside Amazon's usual course of business. 4 Cal. 5th at 957 ("that the worker performs work that is outside the usual course of the hiring entity's business).  People order products made by other companies through Amazon in order to have them delivered expeditiously to their homes.  Amazon does not make or otherwise change the products it delivers; its sole function is delivering products that other companies have produced and packaged.  Claimant was hired to deliver those packages for Amazon.  Consequently, Claimant was working precisely within the business enterprise that Amazon offers:  efficient delivery of other businesses' products to Amazon's customers.

Amazon endeavors to break down the phases of its delivery business into component parts in order to create a fiction that it is in the logistics business rather than the delivery business and that it just hires Amazon workers to deliver the products.  In other words, Amazon claims that its work of moving products from the

7

businesses that produce them to the city where the customer is located is considered logistics whereas finalizing the last part of the delivery process --- or last mile --- to the customer is considered delivery.  (Resp. Opp. pp.19-20).  Amazon's effort to create this false dichotomy between so-called "logistics" and "delivery" is unpersuasive.  Amazon's customers order through Amazon to get the product delivered to them directly, not delivered to the city in which they live.  Fast delivery, not "logistics", is what Amazon promises their customers. Customers would not even engage with Amazon unless it was delivering the products they order to them directly at their work or home. Using a different word for delivery that incorporates some aspect of the delivery process – the logistics involved in delivery --- does not magically change the reality that Amazon is a delivery company.  It may use logistics, among other things, to accomplish that goal but that doesn't erase Amazon's core function of being a delivery company. Clever semantics does not succeed in changing the truth:  Amazon is a delivery company.

      Amazon's own advertising materials and promises to the public belie its fictionalized account here where it tries to characterize Claimant as an independent contractor rather than an employee.  Amazon tells the public through its Twitter (X) account that it promises a "last-mile delivery network": Cl. Ex. F Amazon News Tweet. Aug. 10, 2020.  Claimant's Ex. E, at 1, Cl. Ex. E Sr. Program Manager, Offer Evolution, NA DSP.  Indeed, Amazon's CEO Jeff Bezos described to shareholders that what Amazon offers its customers is "low prices, vast selection, and *fast delivery*." (emphasis provided). Cl. Ex. B, 2020 Amazon Annual Report.  Mr. Bezos does not say Amazon offers customers logistics.  Amazon's SEC Filing states that in North America it "fulfill[s] customer orders … through … fulfillment and *delivery networks that we operate*."  Id. (emphasis provided). Cl. Ex. A. p. 3 Amazon's U.S. Securities and Exchange Commission Form 10-K.

      Amazon's creative effort to claim that its product delivery business is somehow different and divorced from its drivers' product delivery to Amazon's customers has been rejected in other analogous areas.  Uber and Lyft tried to claim their drivers were in a different and separate business than the companies who paid them in order to classify them as independent contractors rather than employees.  Courts rejected those claims.  Like Amazon, Uber and Lyft each claimed they just provided the technology through an app used for transportation

and not the transportation itself which was provided by the drivers who downloaded the app to their phones. Namisnak v. Uber Techs., Inc., 444 F.Supp.3d 1136, 1143 (N.D. Cal. 2020); O'Connor v. Uber Techs., Inc., 82 F.Supp.3d 1133, 1141 (N.D. Cal. 2015); Cotter v. Lyft, Inc., 60 F.Supp.3d 1067, 1078 (N.D. Cal. 2015). Lyft and Uber advertise themselves as transportation service companies to the public but then abdicate this role when they seek to have their transporting drivers considered independent contractors, rather than employees. Courts have been unpersuaded by this pretext finding that their drivers are in the same transportation business as Uber and Lyft. Amazon's business model of having drivers use an app on their phone to guide them as to where to pick up and drop off packages parallels that of the Uber and Lyft business models that likewise use an app to guide drivers to pick up customers to deliver them to their desired final destination. Amazon has not provided a compelling distinction that would warrant ignoring the courts' consistent decisions that the drivers of passengers in a transportation business vary legally from the drivers of packages in a delivery business.

      Amazon's argument that it uses "other delivery providers, including the U.S. Postal Service, UPS, regional delivery companies … for local delivery services" shows precisely how Claimant is different. The U.S. Postal Service, UPS and regional delivery companies are independent companies that provide a service outside of Amazon's "usual course of business." They deliver letters and packages to all kinds of customers from all over the world, not just Amazon's. They are independent companies that control what their employees do. Amazon does not control their employees. These companies' employees don't download an Amazon app and aren't tracked by Amazon as they deliver. Amazon does not set their prices nor set up the delivery blocks they must use. These other delivery providers are broader and outside of Amazon's usual course of business and are independent companies. Claimant clearly is not. She worked solely within Amazon's usual course of business in delivering only packages to Amazon customers at prices Amazon set, she was not an independent business enterprise, and Amazon controlled how and when she delivered those packages and how she was paid.

The Amazon drivers who accomplish Amazon's advertised promise of delivery to the "last mile", are in precisely the same delivery business as Amazon. Indeed, Amazon has admitted that Claimant "deliver[ed] Amazon packages." Claimant's Ex. C at 1; Claimant's Ex. D at 14.  Amazon's customers are not seeking "logistics", they are seeking delivery and if Amazon uses "logistics" to coordinate that delivery across the country and to the last mile of delivery, that doesn't change the fact that Amazon is in the business of delivery just as its CEO, SEC Filing, public postings, and materials to workers state.  Accordingly, Amazon is unable to demonstrate that factor B has been met and that Claimant's job is "outside the usual course of" Amazon's delivery business.

**Factor C:  Worker customarily engaged in an independently established business of the same nature**

Factor C of the ABC test addresses whether Claimant was "customarily engaged in an independently established trade, occupation, or business of the same nature as the work performed." Dynamex, 4 Cal. 5th 957. Essentially this goes to whether Claimant had a delivery business that was established "independently of the employer." Dynamex, 4 Cal. 5th at 963 n.3. There was no evidence presented that Claimant had any such delivery business outside of what she did for Amazon.

Claimant set forth in her Declaration that she delivered solely for Amazon at Amazon prices to Amazon customers.  She did not advertise delivery services to others nor did she own a delivery business.  She did not seek a business license for delivery services. The only delivery she did was for Amazon. Claimant Charves-Meeks Declaration, Paragraphs, 7-9.  Amazon did not take Claimant's deposition or otherwise present any contrary evidence.

Amazon posits that Claimant's downloading of Amazon's Flex app was an effort to establish an independent business.  This argument is not persuasive. Amazon's app was for use of delivering packages solely to Amazon customers. Factor C requires that a business has to be "independent" of the employer.

Amazon speculates about many possibilities of what Claimant might have done to establish an independent business but does not demonstrate any actual evidence of an independent business.  This effort is insufficient to counter

10

summary judgment when it is Amazon's burden to prove that factor under the law in order to defeat the presumption that Claimant is an employee. Since Amazon has the burden of demonstrating all ABC factors have been met and it has not demonstrated any evidence that Claimant had an independent delivery business, the absence of proof of this factor alone supports a finding that the law's presumption that Claimant is an employee has been satisfied.

**Business to Business Exception to the ABC Test**

Amazon argues that the ABC test does not apply to Claimant Charves-Meeks claims due to an exception that applies to "bona fide business-to-business contracting relationships" including those involving a "sole proprietor." Cal. Lab. Code §2776(a). For all the same reasons that Amazon failed to meet factor C of the ABC test set forth above, this effort to evade the requirements of the ABC test fails. The "business-to-business" exemption requires that Amazon prove all 12 elements in order for the ABC test not to apply. Id. at §2776(a)(4)(12). With very little analysis, Amazon clearly fails at least 4 of the required elements, so the remaining elements need not even be addressed.

Just as Amazon failed to show factor C that Claimant had an "independently" established business, the business-to-business exemption requires similarly that Amazon show that Claimant was "engaged in an independently established business…of the same nature as that involved in the work performed" for Amazon. §2776(a)(6). The requirement is that Claimant actually did have such an "independently" established business, not that Amazon could imagine a world in which she could have if she wanted. Hypotheticals are insufficient to establish evidence of the required element. Likewise, Amazon proposes that Claimant could have advertised and established a business to provide delivery services to other customers. §2776(a)(7)&(8). The business-to-business exception requires actual facts that Claimant did act to do so, not that she could have dreamed of doing so. Finally, the business-to-business exception requires that Amazon show that Claimant negotiated her own rates. §2776(a)(10). Claimant was paid according to Amazon's rate schedule and could not and did not attempt to get Amazon to pay her at a different rate than Amazon determined was

appropriate.  Amazon's pay to Claimant was decidedly not open to negotiation nor did Amazon demonstrate an iota of evidence that it was.

The business-to-business exemption applies to those who have actual independent contracting businesses not to those who could have tried to establish a business in a hypothetical world.  Therefore, the ABC test applies to Claimant Charves-Meeks.

**The ABC Test applies to Claimant's Labor Claims**

All of Claimant Charves-Meeks claims against Respondent Amazon relate to the work she did as a driver picking up and delivering packages for Amazon within the designated time blocks set forth by Amazon's Flex app.  Amazon has agreed that the ABC test applies to Claimant Charves-Meeks' minimum wage and meal and rest break claims relating to that delivery work but argues that the ABC test does not apply to all of her other claims such as not being reimbursed for business expenses (First Claim), not being provided with wage statements (Fourth Claim), not being given paid sick leave (Fifth Claim), and failing to be paid within required time limits (Sixth Claim) and the damages and penalties for any labor violations available under the UCL and PAGA. (Seventh and Eighth Claim). Instead, Amazon asserts that those labor code claims should be analyzed under the Borello multifactor analysis. This issue comes up often in the courts when a worker claims both wage order and labor code violations relating to the same essential work they performed for a hiring entity.  California courts have routinely held that "the ABC test applies to Labor Code claims which are either rooted in one or more wage orders or predicated on conduct alleged to have violated a wage order."  Gonzales v. San Gabriel Transit, Inc., 40 Cala. App. 5th 1131, 1157 (2019). See also, e.g. Parada v. E. Coast Transp. Inc., 62 Cal. App. 5th 692, 695 (2021); Goro v. Flowers Foods, Inc., Case No. 17-CV-2580 TWR (JLB), 2021 WL 4295294 at *9 (S.D. Cal. Sept. 21, 2021); Johnson v. VCG-IS, LLC, No. 30-2015-000802813-CU-CR-CXC, 2018 WL 3953771 (Cal. Super. July 18, 2018).

It makes no sense to have the law characterize the same worker as an employee for purposes of wage laws and an independent contractor for labor laws for the exact same work performance.  Indeed, to do so would lead to contradictory

12

and confusing results.  Hiring entities would be confronted with a minefield and not know how to treat workers in a consistent way.  For example, it is illogical to say that the law requires a hiring entity to pay a worker minimum wage and provide rest and meal breaks because they are an employee for wage order purposes, but that same hiring entity is not required to treat them as employees to report and pay those minimum wages timely under labor laws.  Dissecting the same worker conduct into sometimes being that of an employee and sometimes being that of an independent contractor would result in a confusing morass for companies and workers to navigate to comply with the law.  The laws – whether wage order or labor code – were designed to protect workers.  If a worker is deemed an employee entitled to wage order protection, they should likewise be an employee under the labor code for that same work.  To do otherwise would undermine statutory authority, and frankly produce an unwieldy and undecipherable mess of worker protection laws.

Having found after applying the ABC test that Claimant Charves-Meeks was an employee entitled to minimum wage and meal and rest breaks under California wage orders when she picked up and delivered packages, the same ABC analysis should apply to whether she received wage statements, was paid minimum wages timely, was reimbursed for her expenses, and received sick leave.  All of the claims are rooted in the same core conduct that Claimant performed for Amazon.  Gonzales, 40 Cala. App. 5th 1131, 1157 (2019)(work is "either rooted in one or more wage orders or predicated on conduct alleged to have violated a wage order").  For the same reasons, this Arbitrator found Claimant was an employee under wage orders because Amazon was unable to meet its burden in 2 of the 3 ABC factors analyzed, this Arbitrator finds that she is also an employee under the labor codes for all of her remaining claims and the derivative UCL and PAGA claims that relate to damages and penalties.

**<u>The Statute of Limitations is not a Defense</u>**

Respondent for the first time argued in its Opposition to the Motion for Partial Summary Judgment that the statute of limitations barred Claimant Charves-Meeks' PAGA claim (Claim 8).  This is nonresponsive to the Partial Summary Judgment

13

arguments about whether Claimant was an employee or an independent contractor. This defense was not preserved previously as the law requires. The statute of limitations defense must be asserted as an affirmative defense in a party's answer. (Fed. R. Civ. P. 8(c)(1): "in responding to a pleading, a party must affirmatively state any avoidance or affirmative defense, including:...statute of limitations.") In Amazon's final Answer to the Third Amended Complaint (improperly labeled Second Amended Complaint) filed on November 6, 2023, it did not assert an affirmative defense that Claimant failed to meet the statute of limitations. Even if Amazon had raised the statute of limitations as an affirmative defense in prior answers, the final answer completely replaces any previous answers and governs in the case. Second, the statute of limitations was not raised in any motion for summary judgment. Finally, Claimant set forth in its Second Amended Complaint that Amazon received notices that were filed relating to the same claims brought against Amazon by different claimants and that these prior notices provided Amazon with notice that would relate back to all workers with such claims going back to 2015. Hutcheson v. Superior Court, 74 Cal. App. 5th 932, 940-945 (2022)(PAGA claims "relate back" when they "rest on the same general set of facts, involve the same injury, and refer to the same instrumentality as the claims in the original complaint.")

Respondent waived the affirmative defense of the statute of limitations and cannot belatedly raise it in response to partial summary judgment on an entirely different argument. Additionally, Claimant's PAGA claims relate back to similar conduct by Amazon was notified about involving other workers.

**Conclusion**

For the foregoing reasons, this Arbitrator finds that Claimant Charves-Meeks was Amazon's employee under both wage order and labor code laws. Accordingly, partial summary judgment related to misclassification is granted to the Claimant on all of her claims.

By the Arbitrator,

*Lisa M. Rau, Judge (ret.)*
Signature
Lisa M. Rau, Judge (Ret.)
Dated: November 6, 2024

14