# EXHIBIT 3



**AMERICAN ARBITRATION ASSOCIATION**
**Employment Arbitration Tribunal**

In the Matter of the Arbitration between

Robin J. Charves-Meeks, Claimant
-vs-
Amazon Logistics, Inc., Respondent

Case Number: 01-20-0007-3946

## INTERIM AWARD

I, Lisa M. Rau, having been designated in accordance with the personnel manual or employment agreement entered into between the above-named parties and dated November 20, 2018, and having been duly sworn, and having duly heard the proofs and allegations of the Parties, and Claimant Robin J. Charves-Meeks (Charves-Meeks) being represented by Nathan L. Nanfelt, Esquire and Natida Sribhibhadh, Esquire of Keller Rohrback, L.P., and Respondent Amazon Logistics, Inc. (Amazon) being represented by Devon DeMarco, Esquire, of Ogletree Deakins, hereby enters an Interim Award.

On November 6, 2024, this Arbitrator found partial summary judgment on the issue of misclassification and found that as a matter of law Claimant Robin Charves-Meeks was an employee of Respondent Amazon Logistics, Inc. for all claims. The remaining issue to be determined at an arbitration held on November 18, 2024 was whether any damages are owed to Claimant Charves-Meeks for each claim, and if so, in what amount. This Arbitrator

1

considered the written submissions, the credible evidence, the applicable law and arguments by counsel and hereby issues the following Interim Award:

    A.    Claim One (Reimbursement) (Cal. Lab. Code § 2802)

The law requires that employers "shall indemnify" employees "for all necessary expenditures or losses incurred by the employee as a direct consequence of the discharge of his or her duties." Cal. Lab. Code § 2802.

The Arbitrator found that Claimant drove on behalf of Respondent and should be compensated at the IRS mileage rate for all miles driven. The parties stipulated to Claimant's mileage as 207.85 miles in 2018 and 443.15 miles in 2019 and the IRS mileage reimbursement rates was 54.5 cents per mile in 2018 and 58 cents per mile in 2019 with the calculations as set forth below. The IRS already includes compensation for repairs and Claimant's transmission repair occurred after Claimant's employment for Respondent, so additional compensation for that repair is not due.

Claimant was required to have 1 cell phone in order to fulfill her work obligations for the seven months she worked for Amazon both in accessing the schedule and for deliveries. Claimant's use of the phone for personal reasons is irrelevant since she was required to have a phone to work for Amazon and using it for personal reasons would not have reduced or changed her monthly payment. Claimant's choice to have a second phone was not found to be necessary to her work for Amazon and is not compensable. Claimant's need to have a safety vest and beach wagon as equipment to safely and effectively do her job for Amazon was credible and she should be reimbursed for those expenses.

The credible evidence supports that Claimant incurred the following expenses:

<u>Mileage</u>
| | | |
|---|---|---|
| 2018 | 207.85 miles x IRS rate of $.545/mile = 113.28 | |
| 2019 | 443.15 miles x IRA rate of $.58/mile = 257.03 | |
| Total | | $ 370.31 |

<u>Cell phone</u>
1 phone for 7 months of work with Amazon at $50/month      350.00

<u>Other expenses</u>
Safety vest                                                                           17.00
Beach wagon                                                                      59.99

**Total Expenses                                                                 $797.30**

    B.    Claim Two (California Minimum Wage)

California law requires that employers pay employees the minimum wage for each hour they worked that was unpaid. Cal. Lab. Code § 1194. The law does not permit employers to average all hours worked to compute an employer's minimum wage obligation. An employer cannot escape the responsibility of compensating a worker for unpaid hours at the minimum wage by arguing that for the worker's other paid hours it paid higher than minimum wage. <u>Armenta v. Osmose, Inc.</u>, 135 Cal. App. 4th 314, 319 (2005).

This Arbitrator finds that the credible evidence showed that Claimant was not paid for wait times before checking in which averaged about 22.5 minutes each day she worked. The credible evidence also showed that Respondent sent Claimant to locations for deliveries that required a longer return commute than Claimant would have had to if she commuted home from Respondent's original pick-up location and this commute home from delivery locations added an average of 25 minutes to her work during each block she worked. The additional wait time and commuting time amounted to a total of 47.5 minutes to each of her shifts. Respondent paid Claimant a set amount for the "block estimated time."

3

Claimant is entitled to all time that she worked that exceeded Amazon's "block estimated time" which was calculated from Joint Exhibit 302 as follows:

| Block Start Date and Time | Block Estimated Duration (Hours) | Total Actual Time (Conservative) (incl. + 47.5 min.) (Hrs.) | Uncomp. Time (Hrs.) |
|---|---|---|---|
| 11/30/2018 18:00 | 3 | 3.64 | 0.64 |
| 12/3/2018 11:00 | 3 | 4.34 | 1.34 |
| 12/4/2018 12:30 | 3 | 4.62 | 1.62 |
| 12/7/2018 14:00 | 3.5 | 4.22 | 0.72 |
| 12/13/2018 11:00 | 3 | 3.29 | 0.29 |
| 12/13/2018 17:00 | 3.5 | 3.69 | 0.19 |
| 1/4/2019 17:00 | 3.5 | 3.56 | 0.06 |
| 1/18/2019 17:00 | 3.5 | 4.11 | 0.61 |
| 2/4/2019 13:45 | 4 | 6.15 | 2.15 |
| 2/11/2019 12:00 | 3 | 3.31 | 0.31 |
| 2/25/2019 11:00 | 3.5 | 3.02 | - |
| 3/6/2019 17:15 | 3.5 | 3.36 | - |
| 3/11/2019 11:00 | 3 | 2.51 | - |
| 3/11/2019 14:00 | 3 | 3.81 | 0.81 |
| 3/20/2019 16:45 | 3.5 | 5.12 | 1.62 |
| 4/8/2019 12:45 | 3 | 5.41 | 2.41 |
| 4/21/2019 17:00 | 3.5 | 3.82 | 0.32 |
| 5/16/2019 12:30 | 3.5 | 6.12 | 2.62 |
| 10/26/2019 15:30 | 3.5 | 5.70 | 2.2 |
|  |  | **TOTAL** | **17.91** |

Claimant worked 17.91 hours more than Amazon's "block estimated time" during 2018 and 2019. Accordingly, Claimant is entitled to be compensated for that 17.91 additional hours at the California minimum wage for each of the appropriate years.

```
2018   4.8 unpaid hours x $11. (2018 Calif. minimum wage)    $ 52.80
2019   13.11 unpaid hours x $12. (2019 Calif. minimum wage)   157.32
Total                                                        $210.12
```

4

C. Claim Three (Rest Breaks) (IWC Order No. 9-2001)

The law requires employers to provide employees a 10-minute rest break for every 4 hours worked (or a fraction when the employee works at least 3.5 hours) and when employers fail to provide such a rest break "the employer shall pay the employee one (1) hour of pay at the employee's regular rate of compensation for each workday that the rest period is not provided." Industrial Welfare Commission Order No. 9-2001 at ¶ 12. Claimant was never offered these rest breaks and, consequently, cannot be presumed to have waived them.

This Arbitrator finds that the credible evidence showed that Claimant was not provided with rest breaks 14 times when she worked longer than the 3.5 hour threshold requirement. This occurred on the following dates: 11/30/2018, 12/3/2018, 12/4/2018, 12/7/2018, 12/13/2018, 1/4/2019, 1/18/2019, 2/4/2019, 3/11/2019, 3/20/2019, 4/8/2019, 4/21/2019, 5/16/2019, 10/26/2019. (See chart in Section B above derived from Joint Exhibit 302). The calculation includes the additional wait times of 22.5 minutes per block and commuting time to return home from Amazon's delivery locations of 25 minutes per block.

| | |
|---|---:|
| 14 x $17/hour (midpoint of Amazon's promised regular compensation range of $15-19./hour) | |
| TOTAL | **$238.00** |

D. Claim Four (Wage Statement – Cal. Labor Code Section 226(a)).

The law requires that employers must "furnish to their employee….an accurate itemized statement in writing" showing deductions, gross and net wages, total hours worked and hourly rates. Cal. Labor Code Section 226(a). Respondent has the affirmative duty to prove its defense that it had a good faith basis for failing to provide such statements because it believed that Claimant was an independent contractor. Respondent failed to

5

provide any evidence to support its defense such as internal memorandums or testimony. Instead, Respondent relied solely upon legal argument without any substantive evidence.

Litigation against Respondent for misclassification of its Amazon Flex drivers has been ongoing since prior to Claimant's employment in 2018. See Am. Compl., Rittman v. Amazon.com, Inc., Case No. 2:16:cv-155 (W.D. Wash. Dec. 1, 2016). Since that time, multiple judges and arbitrators have found that Amazon Flex drivers were misclassified. Amazon Logistics, Inc. v. Virginia Employment Commission, Va. Cir. Ct. Case No. CL21-2043 (Order). In addition, Respondent has entered into settlement agreements in class and individual actions to resolve such claims. Respondent resolved similar litigation over wage statements in 2017. Raya v. Amazon.com, LLC, 2017 WL 8640811 (N.D. Cal. Feb. 15 2017)(class action settlement over wage statement claims by warehouse associates). When multiple judges and arbitrators have already found Respondent has misclassified workers and Respondent has settled claims to avoid liability, Respondent cannot continuously and indefinitely claim a good faith defense that it did not know what the law required. Respondent bears the burden of proving this defense and provided no credible evidence to support its defense that it had a good faith basis for believing it the law did not require it to provide Claimant wage statements.

The uncontested evidence was that Respondent paid Claimant by direct deposit and never provided any written wage statements. Respondent paid Claimant every Tuesday and Friday. Based on the dates worked as set forth in Joint Exhibit 302, Respondent "knowingly and intentionally" failed to provide Claimant with required wage statements on 16 occasions. Accordingly, Claimant is entitled to 16 Section 226(a) violations.

| | |
|---|---|
| First violation | $   50.00 |
| 15 Subsequent violations @ $100 each | 1,500.00 |

TOTAL                                                                                   **$1,550.00**

E.    Claim Five (Sick Leave – Cal. Labor Code Section 246)

Claimant withdrew this claim.

F.    Claim Six (Waiting Time. – Cal. Labor Code Section 203)

Employers are required to pay all wages due when an employee is separated and risk paying a penalty of the daily wage for each day that they fail to do so up to 30 days. Cal. Labor Code Section 203. Respondent has labeled Claimant as "inactive". There was no evidence presented that either party sought to continue their working relationship since Claimant's last pay period in October 2019. The credible evidence demonstrated that Claimant has constructively been separated from Respondent.

Moreover, when this Arbitrator found partial summary judgment on November 6, 2024 that Claimant was an employee under California law, Respondent no longer had a good faith defense that Claimant need not be paid as an employee rather than an independent contractor. Claimant is owed the maximum penalty for this violation of 30 days multiplied by her daily rate.

Average daily rate of $84.88 x 30 days                                **$2,546.40**

G.    Claim Seven (CA UCL – Cal. Bus. & Prof. Code Section 17208)

Claimant concedes that if the Arbitrator awards damages under Claim One and/or Claim Two, that seeking damages under the UCL would be duplicative recovery and therefore inappropriate under the law. Since this Arbitrator found damages under both Claims One and Two, no UCL damages are due.

7

H.     Claim Eight (PAGA Civil Penalties)

The Private Attorneys General Act (PAGA) was enacted to enable private citizens to act as private attorneys general to seek enforcement of California labor laws in a more extensive way than the state enforcement agencies could accomplish with their limited staffing.  Cal. Lab. Code Sections 2698-99.5.  PAGA remedies are in addition to, and distinct from, other available federal or state statutory remedies.  The nature of the private attorneys general enforcement remedies is to encourage private individuals to assist California in enforcing labor laws and to enable successful litigants to recover for multiple violations of a different nature within the same pay period.  Hernandez v. Towne Park, Ltd., 2012 WL 2373372, at *17 n. 77 (C.D. Cal. June 22, 2012)(noting that federal courts applying California law permitted stacking of remedies); Schiller v. David's Bridal, Inc., 2010 WL 27933650, *6 (E.D. Cal. July 14, 2010) ("it is conceivable that Plaintiff could recover PAGA penalties for each separate type of Labor Code violation."); Snow v. United Parcel Service, Inc., 2020 WL 1638250, at **3-4(C.D.Cal. 2020)(PAGA remedies permitted for various violations).  To do otherwise would enable employers to make multiple legal violations within a given pay period free of any consequence under PAGA.  Unless violations are stacked, employers would be able to commit multiple violations within any pay period and any violation over the initial violation would amount to a "freebie."  This is clearly not within the spirit or letter of the law, which was designed to encourage employers to follow all requirements under the law.

PAGA also states that "[i]f the Labor and Workforce Development Agency or a court issues a determination that a person or employer has engaged in any of the enumerated violations . . . the person or employer shall be subject to a civil penalty of not less than five

8

thousand dollars ($5,000) and not more than fifteen thousand dollars ($15,000) for each violation, in addition to any other penalties or fines permitted by law." Cal. Lab. Code § 226.8(b).  Where this violation is a "pattern or practice," the employer is subject to a civil penalty of "not less than ten thousand ($10,000) and not more than twenty-five thousand dollars ($25,000) for each violation, in addition to any other penalties or fines permitted by law." Id.

Respondent continues to treat Amazon flex drivers as independent contractors even when courts and arbitrators have ruled otherwise.  Amazon Logistics, Inc. v. Virginia Employment Commission, Va. Cir. Ct. Case No. CL21-2043 (Order).  See Exhibits 5-10.  In addition, as a condition of being hired Respondent requires that every Amazon flex driver sign a Terms of Service Agreement that states, "As an independent contractor, you will not be considered as having the status of an employee of Amazon for any purpose[.]". Ex. 303 , pp. 599-600.  This demonstrates Respondent's willful intent to skirt labor laws by having its workers sign an adhesion contract telling them that even if they meet the requirements of being employees under the law, they nevertheless agree that they are not entitled to any employee benefits that the law provides.  Such an Agreement would not be necessary if Amazon drivers were clearly independent contractors under the law.  Moreover, the Agreement intentionally misleads Amazon drivers into believing they do not have the protection of labor laws to which they are legitimately entitled.  Accordingly, this Arbitrator finds that Respondent's PAGA violations were willful and warrant a $10,000 penalty.

The Arbitrator's finding and rationale regarding the other PAGA violations are detailed in each section above and consequently will not be repeated here.  The PAGA violations and the penalties owed are as follows:

9

Reimbursement (failure to pay for car, phone and other expenses)
16 pay periods: $100 for initial violation + $200 x 15 subsequent =  $ 3,100.00

Minimum Wage Violations
13 pay periods: $100 for initial violation + $200 x 12 subsequent =  $ 2,500.00

Missed Rest Breaks
13 pay periods: $100 for initial violation + $200 x 12 subsequent =  $ 2,500.00

Wage Statement Violations
16 pay periods: $250 for initial violation + $1,000 x 15 subsequent = $15,250.00

Waiting Time Violations
Failure to pay wages owed at end of employment (default penalty)  $    100.00

Willful misclassification Labor Code Violations Section 226.8(a)(1) $  10,000.00
TOTAL                                                              **$33,450.00**

Claimant's 25% share                                                   8,362.50
LWDA's 75% share                                                      25,087.50

I.     Prejudgment Interest

The parties agreed upon the percentage of prejudgment interest that applies to each violation. The violation amount and appropriate prejudgment interest are set forth below.

| Claim | Amount | Prejudgment Interest (%) |
|---|---|---|
| Claim One (Reimbursement) | $ 797.30 | 10% |
| Claim Two (CA Min. Wage) | $ 210.12 | 10% |
| Claim Three (Rest Breaks) | $ 238.00 | 7% |
| Claim Four (Wage Statements) | $ 1,550 | 7% |
| Claim Five (Sick Leave) | $ 0.00 | - |
| Claim Six (Waiting Time) | $ 2,546.40 | 10% |
| Claim Seven (UCL) | $ 0.00 | 7% |
| Claim Eight (PAGA) | $ 33,450.00 | - |

The parties are directed to calculate the final prejudgment interest amount from Claimant's last day of work, October 26, 2019, until the date of this Award using the interest rates set forth above. Any dispute about the final total with the prejudgment interest added shall be submitted to the Arbitrator. Respondent is directed to pay Claimant this total amount within 10 days of this Award and to notify the Arbitrator as to that total amount as calculated with the prejudgment interest. Respondent must also pay 75% of the PAGA penalty of $33,450.00 or a total of $ 25,087.50 to the LWDA within 10 days of this Award.

J.  Fee Petition

Claimant's Fee Petition is due within 2 weeks of the date of this Interim Award. Respondent's Brief in Response will be due 2 weeks after Claimant's Fee Petition is submitted. The Arbitrator may hold a hearing within 2 weeks of receipt of Respondent's Brief, if the Arbitrator believes upon review of the submissions that a hearing would be helpful to rendering a decision.

This Interim Award shall remain in full force and effect until such time as a Final Award is rendered.

BY THE ARBITRATOR:

1/23/2025
Date

*Lisa M. Rau, Judge (ret.)*
Lisa M. Rau, Judge (ret.)