# EXHIBIT 4

AMERICAN ARBITRATION ASSOCIATION
Employment Arbitration Tribunal

---

In the Matter of the Arbitration between

**Robin J. Charves-Meeks, Claimant**
-vs-
**Amazon Logistics, Inc., Respondent**

**Case No. 01-20-0007-3946**

---

**FINAL AWARD OF THE ARBITRATOR**

I, Lisa M. Rau, having been designated in accordance with the personnel manual or employment agreement entered into between the above-named parties and dated November 20, 2018, and having been duly sworn, and having duly heard the proofs and allegations of the Parties relating to Claimant's Motion for Attorneys' Fees, and Claimant Robin J. Charves-Meeks (Charves-Meeks) being represented by Nathan L. Nanfelt, Esquire and Natida Sribhibhadh, Esquire of Keller Rohrback, L.P., and Respondent Amazon Logistics, Inc. (Amazon) being represented by Devon DeMarco, Esquire, of Ogletree Deakins, and having previously rendered an Interim Award dated January 23, 2025, do hereby AWARD as follows:

Introduction

1.   Claimant Ms. Charves-Meeks brought multiple claims for violations of California minimum wage and labor laws, every one of which included an independent provision for attorneys' fees and costs for successful claimants.   Claimant was successful at arbitration on every single claim for which she sought recovery.   She now seeks attorneys' fees and costs as the law permits for her counsel's work in litigating her claims and obtaining relief on her behalf.   Claim. Mot.

1

2.  There is agreement[1] that each one of Claimant's claims allows for Claimant to recover attorneys' fees and costs for achieving a successful outcome. Likewise, there is no dispute that Claimant succeeded in every claim she sought relief for at arbitration. Even prior to arbitration, Claimant won partial summary judgment. This Arbitrator's found as a matter of law that Respondent misclassified Claimant as an independent contractor rather than an employee and that the law required Respondent to provide her employee benefits and protections.

3.  Respondent's primary argument to Claimant's motion for attorneys' fees is that the number of hours billed and the hourly rates are allegedly not reasonable nor supported, especially when compared to the total amount of Claimant's recovery. Respondent's Opposition. Claimant counters that the number of hours and the billable rate were reasonable and, to some degree, necessitated by the approach that Respondent took in the discovery process. Claim. Mot.

4.  Claimant has the burden of proof of demonstrating that the number of hours spent are reasonable and that the rate charged is supported by the market rate. See Code Civ. Proc., § 1033.5(c)(5); Comput. Xpress, Inc. v. Jackson, 93 Cal. App. 4th 993, 1020 (2001). Respondent agrees that "[t]he determination of what constitutes reasonable attorneys' fees is committed to the discretion of the trial court (or arbitrator)." PLCM Grp., 22 Cal. 4th at 1096. Resp. Opp., p. 7. Successful Claimant's Counsel are entitled to recover for "all hours reasonably spent." Serrano v. Unruh (Serrano IV), 32

---

[1] Given that there is no dispute between the parties that California labor and minimum wage laws provide for attorneys' fees and costs for all claims that Claimant prevailed on, this Arbitrator will economize by not itemizing every single provision for each claim that allows for attorneys' fees and costs.

2

Cal. 3d 621, 639 (1982). The California Supreme Court has "reiterated that fee awards should be fully compensatory." <u>Ketchum v. Moses</u>, 24 Cal. 4th 1122, 1132-33 (2001).

<u>Attorneys' Fees and Costs Provisions for Successful Claimants</u>

5.  The purpose of California's attorneys' fees provisions imbedded in labor and wage laws is to enable private citizens who have been subjected to violations of law to seek counsel to serve as private attorneys general to seek enforcement of California labor and wage laws and to be entitled to recover damages, including their counsels' fees and costs, when successful. Inherent in any minimum wage claim is that the claimant did not get paid the mandated state minimum wage. Clearly, the anticipated dollar amount at stake is presumed to be meager since the claimant is seeking the difference between the minimum wage and what the worker was paid. The amount of money at issue for most violations of minimum wage laws and other labor laws, while significant to the individual who has been harmed, is generally not significant enough to attract attorneys to litigate the claims because the litigation is time and money intensive making an attorney contingency recovery untenable. However, state enforcement agencies do not have the resources or staffing to investigate and prosecute all violations of the state's labor and wage laws. The California legislature created a solution to their inability to enforce the laws through government agencies by providing for private attorneys' fees fee-shifting requirements for workers who successfully prove that a company violated the law. See, <u>Gramajo v. Joe's Pizza on Sunset, Inc.</u>, 100 Cal. App. 5th 1094, 319 Cal. Rptr. 3d 656, 661 (2024) ("one-way fee shifting provision, whose purpose is to disincentivize violations of minimum and wage laws").

6.  Without these private attorney general enforcement provisions and the opportunity to recover attorneys' fees and costs for meritorious claims, companies could

3

simply ignore labor and minimum wage laws without consequence because the cost of litigating the claim would always be higher than the amount denied to the individual worker.  Indeed, one of Claimant Meeks' successful claims was brought under a law that's very name delineates this purpose and goal, the Private Attorneys General Act (PAGA). Cal. Lab. Code Sections 2698-99.5.

      7.     Attorneys' fees provisions have an imbedded positive mechanism to deter frivolous litigation:  claimants' counsel are not paid unless they win on the merits.  Accordingly, it behooves claimants' counsel to scrutinize and analyze cases at the outset to determine whether or not they think there was a violation of the law that they can prove to a neutral factfinder.  Claimants' counsel will lose time and money from bringing weak cases, and likely will go out of business unless they are selective.

      8.     Likewise, respondents' counsel in this area of law have an obligation to their clients to make an early and ongoing analysis of their likelihood of success on the merits.  At the beginning of the litigation, the amount of money at stake is not usually that significant compared to the attorneys' fees that will be incurred by both parties.  If the respondent loses, their client will have had to pay not only their own attorneys' fees and costs, but they will be required to pay claimants' attorneys' fees and costs along with any damages to the claimants and penalties to the government.

      9.     The attorneys' fee-shifting provisions force all counsel involved in these cases to analyze the likelihood of success at the beginning and throughout the litigation.  An ongoing risk calculus by both sides is critical to avoid surprise to whoever loses: either claimant's counsel does not get paid or respondent pays counsel fees twice, to their own counsel and the claimant's, along with damages to the claimant.

10. Claimant Charves-Meeks' case typifies the comparatively low dollar amount that most minimum wage and labor law violation cases present. Everyone knew at the beginning of the case that litigation costs would dwarf the amount of money Claimant sought to recover. Everyone also understood that the attorneys' fees and costs provisions would be costly to whichever side lost the case. There was no potential that Claimant would get a significant award, as there is in many other types of cases where a final outcome is difficult to predict. Even here where Claimant succeeded on all of her claims, the total amount that Respondent had to pay was $13,704.32 to Claimant and $25,087.50 to the California's Labor Workforce and Development Agency (LWDA) for a total of $38,791.82. Indeed, this case is an example of why legislators who wanted labor laws to be enforced but lacked the government resources to police employer violations developed the solution of having private attorneys general fee-shifting provisions.

11. No one should be astonished that after many months with lengthy submissions submitted by both sides that the amount of Claimant's attorneys' time was substantial compared to the amount in dispute. Respondent would be paying its own attorneys' fees and costs whether it was successful or not and the law would also require Respondent to pay Claimant's counsels' attorneys' fees and costs if Claimant was successful. The fee-shifting provisions do not mean a party who believes it is correct on the law does not have the right to arbitrate. However, the most significant stakes in minimum wage and labor law cases involve the attorneys' fees and costs to whoever loses.

Fees and costs must be reasonable.

12.　The Arbitrator is tasked with the discretion to decide whether Claimant has met her burden that the hours billed are reasonable. PLCM Grp., 22 Cal. 4th at 1096. ("what constitutes reasonable attorneys' fees is committed to the discretion of the trial court (or arbitrator).")

13.　While the amount of damages sought by Claimant was not substantial, the complexity and importance of the issues were significant.  This was not a run of the mill case. The issues warranted expert understanding of the law and the ability to convey complex material in a coherent way.  Each side submitted extensive and well-researched briefs throughout the duration of the case.  This Arbitrator was impressed by the quality of the briefs submitted by both sides and was grateful that the matter was staffed by such able and expert counsel.  This Arbitrator did not find any evidence of Claimant's counsel either over-lawyering or overbilling.  To the contrary, Claimant's counsels' expertise and competence were demonstrated throughout the arbitration process.

14.　Respondent took issue with Claimant's spending extensive time on a case where there was comparatively little to recover.  The derivation of the theory surrounding the need to have an effective legal enforcement mechanism for legislatively enacted minimum wage and labor protections and the creative solution of fee-shifting statutes has already been addressed.  Courts have consistently found that in attorneys' fee shifting cases, the amount of attorneys' fees sought is not deemed excessive simply because it exceeds the amount of damages sought.[2]  Riverside v. Rivera, 477 U.S. 561,

---

[2] The amount of damages in this case totaled $38,791.82 (some to Claimant and some to the state) and the amount of attorneys' fees and costs totaled $340,524.10 which is 8.8 times the total damages.  Respondent incorrectly calculated the amount of attorneys' fees and costs to be 30 times

6

5778-80 (1986); <u>Fegley v. Higgins</u>, 19 F.3d 1126, 1134 (6th Cir. 1994)("fees often dwarf damages in FLSA cases").  Such an outcome goes to the root of why the legislature established fee shifting in the first place:  to enable citizens who have been injured to recover their losses caused by companies' failure to follow the law and to provide motivation to companies to follow the law.

     15.    Often when a claimant's attorneys' fees are challenged for being high compared to the amount recovered, the issue is that counsel was not successful on multiple claims and that they should have deducted time billed for those unsuccessful claims, or that the amount recovered was a small fraction of what was initially sought.  In this case, neither is true.  Claimant was successful on all of her claims and she recovered an amount that was close to the amount she sought.

     16.    Respondent takes issue with Claimant's counsel billing for meetings and research related to overlapping cases against Respondent.  There is nothing inappropriate about this routine practice used by most firms handling similar matters of the same type in order to ensure a unified approach, to coordinate strategy and to reduce inefficiencies.  Indeed, it would be surprising if Respondent's counsel did not participate and bill appropriately for similar meetings addressing the multiple wage and hour cases brought against Respondent.  California courts have consistently held that attorneys' fees can compensate for "work performed in a collateral action that may not have been absolutely necessary to the action in which fees are awarded but was nonetheless closely related to the action in which fees are sought and useful to its resolution."  <u>Children's Hosp. and Medical Center v. Bonta</u>, 97 Cal. App. 4th 740, 779-80

---

the amount recovered by excluding the damages this Arbitrator found were due to the state.  Resp. Opp. at 8.

7

(2002); Wallace v. Consumers Cooperative of Berkeley, Inc.,170 Cal. App. 3d 836, 849 (1985)(a decisionmaker may in their discretion "determine that time reasonably expended in an action includes time spent on other separate but closely related court proceedings").

17. Claimant's counsel contends that they "made efforts to economize work across this and other cases, and successfully did so to the extent not opposed by Amazon." Claim. Mot. at 5. In fact, the parties actually agreed at one point in time to do joint discovery in a number of overlapping cases in order to be more efficient, consistent and benefit from the economies. Id. at 3. Claimant contends that numerous additional hours were spent when Respondent diverged from the plan of working in unison on repeated discovery issues. Id. at 11.

18. In addition, Claimant's counsel reviewed and reduced billings in the overlapping cases to "eliminate redundancy or administrative tasks." Claim. Mot. at 6, 10.

19. Claimant's counsel has agreed that all time billed on the overlapping cases of the same type will not be billed in the future when and if attorneys' fees in those cases are recovered. Claim. Mot. at 6; Nanfelt Decl. ¶28-29, 39.

20. Respondent also contends that some of the entries are vague such as "preparing for" hearings. Resp. Opp. at 13. No law was cited to the effect that one must detail ad nauseum everything one does in preparing for a hearing. Nor does the law require a claimant's counsel to disclose that information to a regular opponent in a motion for attorneys' fees.

21. Respondent likewise criticizes some of Claimant's counsel's .1 or .2 entries for their review of emails and other documents. Resp. Opp. at 13-14. It is more

8

typical for counsel contesting attorneys' fees to complain that counsel's minimum entry is for a quarter of an hour, which is allegedly too much for reviewing a simple email that likely took only minutes rather than the billing of small increments of time like .1 hour (6 minutes) as Claimant's counsel did in this case.  This Arbitrator found nothing inappropriate about Claimant's counsels' billing of .1 and .2 hours to review necessary correspondence or documents.

22.     Respondent also took issue with Claimant's counsel reusing language from prior briefs in other cases on similar topics.[3]  It is a routine for counsel who practice in a specialized area to recycle language from other briefs on the same topic. This enables counsel to use language they have carefully crafted to be clear and coherent on a topic rather than starting all over each time they address a similar topic. This recycling of legal research and refining of language provides the decisionmaker with the benefit of polished language in a particular area of law and simultaneously reduces the amount billed.  Such an approach is inherent in being a specialist in a particular area of law.  In doing so Claimant's counsel was able to "achieve efficiencies when handling similar or overlapping matters", a practice Respondent suggested was important.  Resp. Opp. at 6.  This time-saving practice reduces the number of hours counsel must bill by their avoiding starting from scratch each time a recurring issue must be briefed and inures to the benefit of those who must pay their fees, which in this case is Respondent.

23.     This Arbitrator benefitted by the quality of representation by both sides in this case.  It is worth noting that although Respondent challenges the attorneys' fees billed by Claimant's counsel, Respondent's counsel proffered no evidence to the effect

---

[3]Respondent's counsel likely billed considerable hours assembling multiple copies of Claimant's counsels' prior briefs to find where they used the same language and further spent hours painstakingly color coding 129 pages of the recycled language presumably to show that Claimant reused language that had been used in prior briefs in their area of expertise.  Respondent's Exhibits A-G.

9

that they spent substantially less time or had lower billing rates, or both, than Claimant's counsel. Judging from the submissions received, this Arbitrator suspects Respondent's counsel billed significant hours in their effort to get a successful outcome for their client and likely were billing at the market rate.  No evidence was presented to the contrary.

24.     This Arbitrator finds that the credible evidence demonstrates that number of hours billed by Claimant's counsel is reasonable and does not warrant reduction. Gates v. Rowland, 39 F.3d 1439, 1449 (9th Cir. 1999).

25.     Respondent lodged no credible opposition to Claimant's detailed costs.

### Attorneys' rates are supported as the market rate

26.     Courts have held that whether the hourly rate billed is reasonable can be determined by analyzing what the "prevailing rate for private attorneys in the community conducting noncontingent litigation of the same type."  Ketchum v. Moses, 24 Cal. 4th 1122, 1133 (2001) (emphasis in original).  Counsel who are successful in fee-shifting cases are entitled to be paid "a fee at the fair market value for the particular action."  Id. at 1132.

27.     Respondent's primary response to Claimant's proposed and supported hourly rates is that other lawyers in other cases before other judges and arbitrators were awarded less.  Resp. Opp. at 14-17.  Setting aside that some of the cases cited by Respondent are outdated and not relevant to today's market rate, they also do not address the specific skills, education, and experience of the individual lawyers involved on Claimant's behalf in this case which is the relevant inquiry.

28.     This Arbitrator finds that the hourly rates charged by Claimant's counsel and paralegals are supported and align with market rates.  Claimant's counsel had impressive educational backgrounds and in-depth substantive experience in the specific

areas at issue in this case. As noted earlier, this Arbitrator benefitted from the sophisticated knowledge and training Claimant's counsel brought to this case.

29. Keller Rohrback has a firm committee that annually sets its attorney rates to be in line with the market rate in the community of other attorneys with analogous experience. Nanfelt Decl. ¶25; Lewis Decl. ¶9. In this case, the Keller Rohrback and Tidrick hourly rates were well within reasonable market rates for similar work. Prior arbitrators and judges have approved those rates. Nanfelt Decl. ¶25; Lewis Decl. ¶9; Sribhibhadh Decl. ¶5-6; Tidrick Decl. ¶¶ 2-7,10-20.

30. Jeffrey Lewis is a partner at Keller Rohrback who specializes in employee benefit and other employment cases, mostly class actions, and has extensive litigation and appellate experience including handling numerous cases with multi-million dollar outcomes. Lewis Decl. ¶¶4-5 Mr. Lewis has authored or co-authored more than 20 amicus briefs on employee benefits issues to the U.S. Supreme Court and California Supreme Court. Id. at ¶5. Mr. Lewis serves as a representative of the general public on the ERISA Advisory Council to the Secretary of Labor and has testified before congressional committees regarding pension issues. Nanfelt Decl., Exhibit 1. Mr. Lewis teaches at multiple Bay Area law schools. Id. at ¶6. Mr. Lewis is a 1975 graduate of the Univ. of California, Berkeley School of Law. Lewis Decl. ¶5 Mr. Lewis's current billing rate is $1,300/hour. Lewis Decl. ¶11.

31. Nathan Nanfelt is a senior associate at Keller Rohrback who specializes in complex litigation. Mr. Nanfelt graduated from Seattle University School of Law in 2012. Nanfelt Decl. ¶22 & Exhibit 1. Prior to joining Keller Rohrback, Mr. Nanfelt served as a prosecutor for the King County Prosecuting Office and as a federal district law clerk. Nanfelt Decl. ¶22. Mr. Nanfelt's 2024 hourly rate of $650/hour was recently approved

11

by a retired judge sitting as an arbitrator. Id.  Mr. Nanfelt's current billing rate is $680/hour. Id.

32. Natida Sribhibhadh is a senior associate at Keller Rohrback with 11 years of experience as a litigator in mass torts, wildfire, class action, and other complex cases.  She has been involved in a number of multi-million dollar verdicts and settlements. Sribhibhadh Decl. ¶¶5-6.  She received her J.D. 2014 from University of San Diego School of Law.  Sribhibhadh Decl. ¶4.  Ms. Sribhibhadh's current billing rate is $690/hour. Sribhibhadh Decl. ¶9.

33. Steven G. Tidrick is the managing partner at The Tidrick Law Firm.  Tidrick Decl. ¶1. Counsel at the Tidrick Law Firm focus on class action and complex litigation and arbitration and have extensive experience in wage and hour litigation.  Tidrick Decl. ¶2. Mr. Tidrick graduated from Harvard Law School in 1999.  He clerked for a federal circuit court judge before he began his lengthy career as a litigator.  Tidrick Decl. ¶6.  Tidrick's current billing rate is $973/hour.

34. Joel B. Young is a partner at the Tidrick firm and specializes in complex employment litigation, especially class actions, and has expertise in PAGA matters.  Tidrick Decl. ¶7.  Mr. Young graduated from the University of California, Berkeley School of Law in 2004.  Id. Mr. Young's personal individual hourly rates were recently affirmed. Joel Young Decl. ¶¶11-12.  Mr. Young's current billing rate is $873/hour.

35. The Tidrick Firm's historical hourly rates have been repeatedly approved by courts.  Tidrick Decl. ¶¶10-19. The specific hourly rates requested here by Mr. Young and Mr. Tidrick have been recently awarded in a number of cases.  Lucas v. Amazon Logistics, Inc., AAA Case No. 01-20-0000-3892, Final Award (nov. 9, 2022) ("Messrs. Tidrick and Young are first-rate attorneys"….the "rates are comparable to the rates

charged by other attorneys doing similar work in the local marketplace"); Sportsman v. A Place for Rover, Inc., Case No. 3:19-cv-02053-WHO (N.D. Cal. July 21, 2023) (Messrs. Tidrick and Young's current rates were given a multiplier of 1.3 as appropriate and reasonable").

36. The billing rates of the paralegals at Keller Rohrback, though accounting for a small amount of the total, were also reasonable. Those rates were: Kellyn Green at $430/hour; Alex Chan at $400/hour; Kris Parks and Rosie McKinlay-Mench at $355/hour. The Tidrick Law Firm did not submit bills for their paralegals' work.

37. Multipliers to an attorney's market-based hourly rate are sometimes awarded in these cases to reflect the reality that counsel bear the risk of providing legal services and yet ultimately may not get paid for any of their work. The time intensive nature of these cases amplifies that risk. Significantly, Mr. Tidrick and Young were recently just granted such a multiplier of 1.3 times the market rate. Id. Multipliers "approximate market-level compensation for such services, which typically includes a premium for the risk of nonpayment or delay in payment of the attorney fees." Ketchum, 24 Cal.4th at 1138; Graham v. DaimlerChrysler Corp., 34 Cal. 4th 553, 579-80 (2024). One California Court aptly described the appropriateness of multipliers:

> "Adjusting court-awarded fees upward in contingent fee cases to reflect the risk of recovering no compensation for hundreds of hours of work makes those fee awards consistent with the legal marketplace, and in so doing, helps to ensure that meritorious cases will be brought to enforce important public interest policies and that clients who have meritorious claims, but lack financial resources, will be better able to obtain qualified counsel."

Jeter-Polk v. Casual Male Store, LLC, 2016 WL 9450452 at *8 (C.D. Cal. Mara. 4, 2016).

38. Notably, Claimant's counsel did not seek a multiplier of their market-based hourly rates. The established practice of courts and arbitrators to grant multipliers in this type of contingent employment cases makes Claimant's counsels' decision not to

13

seek a multiplier of their hourly rates all the more significant. This additional factor reinforces the reasonableness of the hours billed and hourly rates that Claimant's counsel seek here.

39. This Arbitrator finds based on the credible evidence that Claimant's counsel has met their burden of demonstrating that they seek payment at rates that are "within the range of reasonable rates charged by and judicially awarded comparable attorneys for comparable work." Bonta, 97 Cal.App.4th 740, 783 (2002); Christian Rsch Inst., 165 Cal.APP. 4th at 1320.

Conclusion

40. This Arbitrator finds that the law and credible evidence support Claimant's Motion for Attorneys' Fees. Claimant was successful on all claims for which she sought relief, her counsels' fees and costs are reasonable, and the rates charged by each involved counsel are reasonable and supported by the market rate. Claimant's counsel demonstrated their considerable expertise and proficiency throughout the arbitration process.

41. Accordingly, for all of the reasons set forth above, the total fees and costs that this Arbitrator finds are reasonable and supported by the credible evidence are:

| TOTAL FEES AND COSTS | |
|---|---|
| General Fees | $ 52,677.00 |
| Ogletree Cases Fees | $ 130,764.00 |
| Claimant-Specific Fees – Keller Rohrback | $ 141,293.50 |
| Claimant-Specific Fees – Tidrick | $ 10,312.20 |
| General/Ogletree Cases Costs | $ 4,765.87 |
| Claimant-Specific Costs | $ 711.53 |
| **TOTAL** | **$ 340,524.10** |

42. Claimant's counsel, Keller Rohrback L.L.P. have represented and agreed not to request "General" and "Ogletree Cases" attorneys' fees and costs incurred that Respondent is ordered to pay in this case in any other matter for which those fees and

14

costs were related and encompassed. That agreement is henceforth an Order by this Arbitrator and counsel are directed that they may notify other arbitrators of this Order without violating any arbitration confidentiality.

43. The administrative fees of the American Arbitration Association and the compensation of the Arbitrator shall be borne in accordance with the provisions of the personnel manual or employment agreement.

44. Respondent is directed to pay the requested amount of $ 340,524.10 to the Keller Rohrback L.L.P. Client Trust Account (the information for which will be supplied by Keller Rohrback) within fourteen (14) days of this Award.

45. This Award is in full settlement of all claims and counterclaims submitted to this Arbitration. All claims not expressly granted herein are hereby denied.

4/29/2025
_____
Date

*Lisa M. Rau, Judge (ret.)*
Lisa M. Rau, Judge (ret.)
Arbitrator

I, Hon. Lisa M. Rau, (ret.), do hereby affirm upon my oath as Arbitrator that I am the individual described herein and who executed this instrument that is my Award.

4/29/2025
_____
Date

*Lisa M. Rau, Judge (ret.)*
Lisa M. Rau, Judge (ret.)
Arbitrator

15